UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KAREN Y. KIRBY,

          NO. CIV. S-13-0021 LKK/JFM PS

    Plaintiff,

  v.

          O R D E R

JERRY BROWN, et al.,

    Defendants.
_____/

For the reasons set forth below, plaintiff's _ex parte_ application for a Temporary Restraining Order and/or a Preliminary Injunction ("TRO/PI") will be denied.[1]

---

[1] The court notes that on January 18, 2013, the court granted plaintiff the choice of either appearing at the January 24, 2013 hearing in person, or appearing by papers (ECF No. 10), after plaintiff requested leave to appear telephonically. The court permitted plaintiff to submit additional papers in lieu of a personal appearance, however they were not to exceed 15 pages in length, including exhibits and attachments.

Plaintiff, despite the order, filed a "Supplemental Declaration" that was twenty-six (26) pages in length (ECF No. 13). The filing, moreover, declared in its first sentence, that plaintiff would appear at the hearing. Plaintiff further defied the court's order by filing sixty-six (66) additional pages, her "Reply," a few minutes before the January 24, 2013 hearing (ECF No. 14). The

1

## I. INTRODUCTION

Plaintiff Karen Kirby, M.D. has been employed as a staff psychiatrist at Mule Creek State Prison and at Salinas Valley State Prison ("SVSP"). Amended Complaint ("Complaint") (ECF No. 8) ¶ 9. However, plaintiff has not worked at either facility since July 31, 2011, pursuant either to a "lock-out" by defendant California Department of Corrections and Rehabilitation ("CDCR"), or because plaintiff was on medical leave, or because plaintiff stopped working on the advice of her union. Complaint ¶¶ 4 (lock-out), 6 (medical leave); Plaintiff's Declaration ¶ 24 (union advice).

Plaintiff, who is disabled, wishes to do her job from a remote location, thus providing "telemedicine psychiatric services" from "a secure CDCR parole office in Santa Cruz." Complaint ¶ 14. Defendants have failed and refused to accommodate plaintiff's disability, specifically, they have refused to allow her to provide these services remotely. Complaint ¶ 6.[2]

---

court chooses to excuse plaintiff's conduct up to this point, recognizing that she is proceeding pro se, and may not have fully comprehended her obligations to this court.

Plaintiff is cautioned that continued defiance of this court's orders (including orders issued by the Magistrate Judge, to whom this case will be referred), may result in sanctions against her (see E.D. Cal. R. 110 & 183(a)), including the dismissal of this lawsuit in its entirety. Plaintiff is bound by the Federal Rules of Civil Procedure, the Local Rules of this court, and all other applicable law. E.D. Cal. R. 183(a). Moreover all obligations placed on "counsel" by the Local Rules of this court apply to plaintiff appearing pro se. Id.

[2] Plaintiff also appears to allege that she was subjected to sexual harassment while she was on the job, and that defendant CDCR fired her because of her age and sex, so that it could replace her with a person who was younger and male.

On Friday afternoon, January 4, 2013, plaintiff filed her original complaint and a request for a TRO seeking to prevent defendants from terminating her employment. (ECF No. 1.) On Monday, January 7, 2013, plaintiff was terminated from her position. Complaint ¶¶ 1 & 2.

On January 8, 2013, this court denied the TRO application because plaintiff provided no evidence to show that she had given any defendant notice of her complaint or application. (ECF No. 6.)

Plaintiff now seeks a TRO/PI for the following "immediate" injunctive relief: ordering Anthem Blue Cross (a non-party) to approve medical coverage; and ordering CDCR to rescind the termination and reinstate her, grant her reasonable accommodation, promote her, and credit her with 306 hours of leave. Complaint at p.36.

As best the court can decipher the Complaint, it appears that plaintiff's federal claims are based upon the following:

(1) 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act);[3]

(2) 42 U.S.C. § 12112 (Title I of the Americans with Disabilities Act);[4]

---

[3] See Complaint ¶ 7. Section 504 provides:

> No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

[4] See Complaint ¶ 6. Title I provides:

> No covered entity shall discriminate against a qualified individual on the basis of

3

    (3)    42 U.S.C. § 12132 (Title II of the Americans with Disabilities Act);[5]

    (4)    42 U.S.C. § 2000e-2(a)(1) (Title VII of the Civil Rights Act of 1964);[6]

    (5)    42 U.S.C. § 1983 ("Section 1983," for federal Due Process and Equal Protection violations);[7] and

---

    disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

[5] See Complaint ¶ 7.  Title II provides:

    Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

[6] See Complaint ¶ 40.  Title VII provides, in relevant part:

    It shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex.

Title VII extends to claims of sexual harassment.  See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66-67, 73 (1986).

[7] See Complaint ¶ 7.  Section 1983 provides:

    Every person who, under color of [law] ... subjects, or causes to be subjected, any ... person within the jurisdiction [of the United States] ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

4

1         (6) 29 U.S.C. § 623(a) (Age Discrimination in Employment Act, "ADEA").[8]

## II. STANDARDS - TRO AND PI

The purpose of issuing a temporary restraining order is to preserve the status quo pending a fuller hearing.[9] Here, plaintiff's application is not truly ex parte, as she has now served the known defendants. See ECF No. 11 (proof of service on the Governor and CDCR). In such a case, "the showing required for a temporary restraining order is the same as that required for a preliminary injunction." Mammoth Specialty Lodging, LLC v. We-Ka-Jassa Inv. Fund, LLC, 2010 WL 1539811 at *2, 2010 U.S. Dist. LEXIS 86369 at *4 (E.D. Cal. 2010) (Karlton, J.).[10]

The legal principles applicable to a request for preliminary injunctive relief are well established:

> a party seeking a preliminary injunction "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence

---

[8] See Complaint ¶ 40. The ADEA provides, in relevant part:

> It shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

[9] See Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local No. 70, 415 U.S. 423, 439 (1974) (TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer").

[10] Citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 (9th Cir. 2001).

5

of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

McDermott v. Ampersand Pub., LLC, 593 F.3d 950, 957 (9th Cir. 2010).[11]

Although plaintiff's original TRO request was to preserve the status quo – that is, to stop the CDCR from firing her – in the current circumstance, she seeks an affirmative injunction to restore her job and benefits to her. Such affirmative relief is "particularly disfavored":

> A prohibitory injunction preserves the status quo. A mandatory injunction "'goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored.'" When a mandatory preliminary injunction is requested, the district court should deny such relief "'unless the facts and law clearly favor the moving party.'"

Stanley v. University of Southern California, 13 F.3d 1313, 1320 (9th Cir. 1994) (citations omitted).

**III. ANALYSIS - TRO AND PI**

    **A.   Likelihood of Success on the Merits.**

        **1.   Title I of the ADA.**

Defendant CDCR argues that plaintiff cannot succeed on the merits because sovereign immunity bars the Title I claim against CDCR (money or injunctive relief). CDCR appears to be correct.[12]

---

[11] Quoting Winter v. NRDC, 555 U.S. 7, 20 (2008).

[12] However, CDCR cites only Walsh v. Nevada Dep't of Human Resources, 471 F.3d 1033, 1036 (9th Cir. 2006), which does not hold that injunctive relief is barred. In this TRO application, plaintiff seeks an injunction against the CDCR and against Governor Brown and Does 1-50 in their official capacities. CDCR incorrect asserts that plaintiff has not sued any state officials in their

6

1  See Okwu v. McKim, 682 F.3d 841, 845 (9th Cir. 2012) ("only Title
2  II abrogates a state's Eleventh Amendment immunity.  That means
3  that a state employee like Okwu, unlike the consumer of state
4  public services ... cannot use the ADA remedial scheme to vindicate
5  his or her ADA rights") (cites omitted).[13]

### 2.   Title II of the ADA.

Defendant CDCR argues that plaintiff's Title II claim cannot succeed because Title II does not address employment discrimination, a matter comprehensively addressed in Title I. CDCR appears to be correct.  See Zimmerman v. Oregon Dept. of Justice, 170 F.3d 1169, 1183 (9th Cir. 1999) ("the Rehabilitation Act does not provide a basis for interpreting Title II to apply to employment," but noting a split in the Circuits), cert. denied, 531 U.S. 1189 (2001).

### 3.   Section 504 of the Rehabilitation Act.

Defendant says nothing about plaintiff's Section 504 claim.[14] Congress has expressly abrogated the state's sovereign immunity ("including remedies both at law and in equity"), for violations

---

official capacities.

[13] The disabled state employee's only remedy, according to Okwu is the state's anti-discrimination laws.

[14] In fairness, the 206 pages of the Complaint and exhibits, and plaintiff's 207 page declaration, are very hard to read and understand.  It is not impossible to miss the fact that plaintiff is suing under Section 504, or indeed under anything other than the ADA, especially with the limited time defendant had available to respond to plaintiff's voluminous papers.  The court appreciates defendant's candor in conceding that in light of the time constraints, it missed the Section 504 claim.

7

of Section 504. See 42 U.S.C. § 2000d-7(a);[15] Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) ("because the State voluntarily accepted federal funds under Section 504, it has waived its right to immunity from suit under the Eleventh Amendment").[16] The complaint appears to state a prima facie case under Section 504,[17] which covers employment discrimination.[18]

---

[15] The waiver provision states:

> (1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 ....
>
> (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

[16] The court assumes, without deciding, that the State has accepted federal Rehabilitation Act funds.

[17] See Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003):

> To establish a violation of § 504 ... a plaintiff must show that (1) she is handicapped within the meaning of the RA; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance.

[18] See School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 278 (1987) ("The range of programs subject to § 504's prohibition is broader, however, than that covered by Title VI, because § 504 covers employment discrimination even in programs

**4. Section 1983.**

Defendant says nothing about plaintiff's Section 1983 claim. However, there is some doubt about whether plaintiff can press a Section 1983 claim for discrimination based upon disability, since Title I of the ADA provides a comprehensive remedy for such discrimination (but apparently, no damages). See Okwu v. McKim, 682 F.3d at 846. In any event, it appears that the Eleventh Amendment may bar any Section 1983 claim against CDCR – even a claim for injunctive relief only. Fireman's Fund Ins. Co. V. City of Lodi, California, 302 F.3d 928, 957 n.28 (9th Cir.) ("The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies") (internal quotation marks omitted), cert. denied, 538 U.S. 961 (2003).[19]

Claims "seeking only prospective declaratory or injunctive relief against state officers in their official capacities" are not so barred. Id. (internal quotation marks omitted), citing Los Angeles County Bar Assoc. V. Eu, 979 F.2d 697, 704 (9th Cir. 1992). Plaintiff has sued – and served – Governor Brown in his official capacity (along with Does 1-50, presumably also state officials in their official capacities).[20] Also, a Section 1983 claim that is

---

that receive federal aid with a primary objective other than the promotion of employment").

[19] Citing Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1995) (per curiam).

[20] Governor Brown has not responded to plaintiff's application for TRO/PI. However, plaintiff does not appear to seek any relief

9

not simply predicated upon violations of the ADA would not appear to be precluded by the ADA or the Eleventh Amendment. Cf. Okwu, 682 F.3d at 846 (separately analyzing Section 1983 claim after finding that the ADA precludes any ADA claim predicated solely on violations of the ADA).

### 5. Title VII of the Civil Rights Act of 1964.

Defendant says nothing about plaintiff's Title VII claim. It appears that Congress has abrogated the states' sovereign immunity for Title VII claims. See Nevada Dept. of Human Resources v. Hibbs, 538 U.S. 721, 729-730 (2003) ("Congress responded to this history of discrimination by abrogating States' sovereign immunity in Title VII of the Civil Rights Act of 1964," and the Supreme Court "sustained this abrogation" in Fitzpatrick v. Bitzer, 427 U.S. 445 (1976)). The complaint appears to state a prima facie case under Title VII.

### 6. ADEA.

Defendant says nothing about plaintiff's ADEA claim. However, it appears that there may be no valid abrogation of sovereign immunity for such a claim. Kimel v. Florida Bd. of Regents, 528 U.S. 62, 91 (2000) ("The ADEA's purported abrogation of the States' sovereign immunity is accordingly invalid").

...

While plaintiff appears to state a prima facie case under her

---

from the Governor (as distinguished from the CDCR) on this application, so the non-response is of no concern here.

non-barred claims,[21] her papers do not make it clear that she is likely to prevail on the merits. Plaintiff's memorandum in support of her application moreover, focuses on her right to intervene in Coleman v. Brown, Civ. No. 2:90-cv-520 (E.D. Cal.). It does not show that she is likely to succeed on the merits of her complaint.

**B.  Irreparable Harm.**

Plaintiff runs into more trouble when she alleges irreparable harm. She alleges that defendants are preventing her from providing psychiatric services to inmates, which, she claims, has caused the suicide rate to spike 400%. The court has no opinion on this assertion, because plaintiff does not appear to have standing to litigate a claim of harm to others.

The harm to plaintiff herself meanwhile, is all financial in nature: lost wages and benefits; her home will go into foreclosure because of her lost wages; terrible tax consequences will result when she cannot repay a tax-advantaged loan because of her lost wages. Ordinarily, monetary losses do not constitute irreparable injury:

> [T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury. * * * "The key word in this consideration is irreparable. Mere injuries, however substantial, in

---

[21] Plaintiff does support her claims with a signed declaration in support of her claims. The declaration can be read to show that she was discriminated against and harassed because of her gender, and that defendants failed to engage in required informal dialogue needed to determine how plaintiff could be accommodated, and denied reasonable accommodation without any explanation. See, e.g., Plaintiff Declaration (ECF No. 8-1) ¶¶ 16 (failure to engage in informal dialogue), 37 (failure to accommodate), 40 (gender discrimination), 44 (sexual harassment).

11

> terms of money, time and energy necessarily expended * * * are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

Colorado River Indian Tribes v. Town of Parker, 776 F.2d 846, 850 (9th Cir. 1985), quoting Sampson v. Murray, 415 U.S. 61, 90 (1974).

In this case however, defendants argue, apparently correctly, that monetary damages are not available for employment discrimination under the ADA. If no monetary damages are available at all, then possibly plaintiff is suffering irreparable harm from her lost wages.

No one has briefed whether monetary damages are available under plaintiff's other apparently viable claims, namely those under Title VII and Section 504. However, it appears that back-pay is available under Title VII, as an equitable award, if plaintiff prevails.[22] Back-pay may also be available under Section 504.[23] If monetary damages are available pursuant to those statutes, then plaintiff is less likely to be suffering irreparable harm.

////

---

[22] Price v. Stevedoring Services of America, Inc., 697 F.3d 820, 837 (9th Cir. 2012) (en banc) (for Title VII, "'An award of back pay is appropriate to advance Congress' intent to make persons whole for injuries suffered through past discrimination'"), quoting Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1020 (9th Cir. 2000) ("The relevant [Title VII equitable] remedies include reinstatement and awards of back pay and front pay").

[23] See Consolidated Rail Corp. v. Darrone, 465 U.S. 624, 631 (1984) ("respondent, having alleged intentional discrimination, may recover backpay in the present § 504 suit").

**C.    Balance of Equities.**

Plaintiff alleges that her pay has been wrongfully withheld for seventeen (17) months. Plaintiff does not explain why she did not seek to correct the non-payment of wages and benefits before now. If plaintiff is restored to the payroll, assuming the court could order this, then defendants will have to pay her salary, and presumably will never get it back, even if plaintiff ultimately loses the lawsuit. However, if the status quo is maintained, it appears that plaintiff will be able to recover her lost wages through back-pay awards if she prevails under Title VII and/or Section 504.

**D.    The Public Interest.**

There is a public interest in having psychiatrists on staff to serve the prison population. However, it appears that plaintiff was not working for the 17 months prior to her termination date because she was on medical leave. If granting plaintiff reinstatement would only place her back into non-working status, that would not seem to advance the public interest.

**IV.  ANALYSIS - RECONSIDERATION**

Plaintiff seeks reconsideration of the court's January 8, 2013 Order (ECF No. 6), denying her true <u>ex parte</u> application for a TRO or PI. Plaintiff asserts that she had, in fact, served defendant with her papers, even though she presented no evidence of it to the court at the time.

The decision was correct when entered, as it was plaintiff's responsibility to show that she had provided the required notice,

which she did not do. In any event, the court can no longer "restrain" the CDCR from firing plaintiff, because it has already done so.

Finally, the renewed TRO application currently before the court moots the earlier, failed, TRO application.

**V.   CONCLUSION**

For the reasons stated above:

1. Plaintiff's ex parte application for a TRO and/or PI (ECF No. 8), is **DENIED**;

2. Plaintiff's motion for reconsideration (ECF No. 9), may be decided on the papers without the need for oral argument, and is **DENIED**; and

3. Pursuant to E.D. Cal. R. 302(c)(21), this matter is referred to the Magistrate Judge assigned to this case for further proceedings.[24]

IT IS SO ORDERED.

DATED: January 24, 2013.

```
                                    LAWRENCE K. KARLTON
                                    SENIOR JUDGE
                                    UNITED STATES DISTRICT COURT
```

---

[24] The Magistrate Judge is of course free, if he chooses, to require plaintiff to amend her Complaint to comport with the "short and plain statement" requirements of Fed. R. Civ. P. 8(a).

14