UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KAREN Y. KIRBY,

        NO. CIV. S-13-0021 LKK/JFM PS

      Plaintiff,

   v.

              O R D E R

JERRY BROWN, et al.,

      Defendants.

_____/

    For the reasons set forth below, plaintiff's ex parte application for a Temporary Restraining Order and/or a Preliminary Injunction ("TRO/PI") will be denied.[1]

_____

[1] The court notes that on January 18, 2013, the court granted plaintiff the choice of either appearing at the January 24, 2013 hearing in person, or appearing by papers (ECF No. 10), after plaintiff requested leave to appear telephonically. The court permitted plaintiff to submit additional papers in lieu of a personal appearance, however they were not to exceed 15 pages in length, including exhibits and attachments.

Plaintiff, despite the order, filed a "Supplemental Declaration" that was twenty-six (26) pages in length (ECF No. 13). The filing, moreover, declared in its first sentence, that plaintiff would appear at the hearing. Plaintiff further defied the court's order by filing sixty-six (66) additional pages, her "Reply," a few minutes before the January 24, 2013 hearing (ECF No. 14). The

I.    INTRODUCTION

Plaintiff Karen Kirby, M.D. has been employed as a staff psychiatrist at Mule Creek State Prison and at Salinas Valley State Prison ("SVSP"). Amended Complaint ("Complaint") (ECF No. 8) ¶ 9. However, plaintiff has not worked at either facility since July 31, 2011, pursuant either to a "lock-out" by defendant California Department of Corrections and Rehabilitation ("CDCR"), or because plaintiff was on medical leave, or because plaintiff stopped working on the advice of her union. Complaint ¶¶ 4 (lock-out), 6 (medical leave); Plaintiff's Declaration ¶ 24 (union advice).

Plaintiff, who is disabled, wishes to do her job from a remote location, thus providing "telemedicine psychiatric services" from "a secure CDCR parole office in Santa Cruz." Complaint ¶ 14. Defendants have failed and refused to accommodate plaintiff's disability, specifically, they have refused to allow her to provide these services remotely. Complaint ¶ 6.[2]

_____

court chooses to excuse plaintiff's conduct up to this point, recognizing that she is proceeding pro se, and may not have fully comprehended her obligations to this court.

Plaintiff is cautioned that continued defiance of this court's orders (including orders issued by the Magistrate Judge, to whom this case will be referred), may result in sanctions against her (see E.D. Cal. R. 110 & 183(a)), including the dismissal of this lawsuit in its entirety. Plaintiff is bound by the Federal Rules of Civil Procedure, the Local Rules of this court, and all other applicable law. E.D. Cal. R. 183(a). Moreover all obligations placed on "counsel" by the Local Rules of this court apply to plaintiff appearing pro se. Id.

[2] Plaintiff also appears to allege that she was subjected to sexual harassment while she was on the job, and that defendant CDCR fired her because of her age and sex, so that it could replace her with a person who was younger and male.

2

1    On Friday afternoon, January 4, 2013, plaintiff filed her
2  original complaint and a request for a TRO seeking to prevent
3  defendants from terminating her employment.  (ECF No. 1.)   On
4  Monday, January 7, 2013, plaintiff was terminated from her
5  position.  Complaint ¶¶ 1 & 2.

6    On January 8, 2013, this court denied the TRO application
7  because plaintiff provided no evidence to show that she had given
8  any defendant notice of her complaint or application. (ECF No. 6.)

9    Plaintiff now seeks a TRO/PI for the following "immediate"
10  injunctive relief: ordering Anthem Blue Cross (a non-party) to
11  approve medical coverage; and ordering CDCR to rescind the
12  termination and reinstate her, grant her reasonable accommodation,
13  promote her, and credit her with 306 hours of leave.  Complaint at
14  p.36.

15    As best the court can decipher the Complaint, it appears that
16  plaintiff's federal claims are based upon the following:

17    (1)  29 U.S.C. § 794 (Section 504 of the Rehabilitation Act);[3]

18    (2)  42 U.S.C. § 12112 (Title I of the Americans with
          Disabilities Act);[4]
19

20    [3] See Complaint ¶ 7.  Section 504 provides:

21        No otherwise qualified individual with a disability
          ...  shall, solely by reason of her or his
22        disability, be excluded from the participation in,
          be denied the benefits of, or be subjected to
23        discrimination under any program or activity
          receiving Federal financial assistance.
24

25    [4] See Complaint ¶ 6.  Title I provides:

26        No covered entity shall discriminate against
          a   qualified   individual   on   the   basis   of

3

(3)  42 U.S.C. § 12132 (Title II of the Americans with Disabilities Act);[5]

(4)  42 U.S.C. § 2000e-2(a)(1) (Title VII of the Civil Rights Act of 1964);[6]

(5)  42 U.S.C. § 1983 ("Section 1983," for federal Due Process and Equal Protection violations);[7] and

---

disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

[5] See Complaint ¶ 7.  Title II provides:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

[6] See Complaint ¶ 40.  Title VII provides, in relevant part:

It shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex.

Title VII extends to claims of sexual harassment.  See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66-67, 73 (1986).

[7] See Complaint ¶ 7.  Section 1983 provides:

Every person who, under color of [law] ... subjects, or causes to be subjected, any ... person within the jurisdiction [of the United States] ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

4

1    (6)  29 U.S.C. § 623(a) (Age Discrimination in Employment
     Act, "ADEA").[8]

2

3  **II.  STANDARDS - TRO AND PI**

4      The purpose of issuing a temporary restraining order is to

5  preserve the <u>status quo</u> pending a fuller hearing.[9]   Here,

6  plaintiff's application is not truly <u>ex parte</u>, as she has now

7  served the known defendants.   <u>See</u> ECF No. 11 (proof of service on

8  the Governor and CDCR).   In such a case, "the showing required for

9  a temporary restraining order is the same as that required for a

10  preliminary injunction."   <u>Mammoth Specialty Lodging, LLC v.</u>

11  <u>We-Ka-Jassa Inv. Fund, LLC</u>, 2010 WL 1539811 at *2, 2010 U.S. Dist.

12  LEXIS 86369 at *4 (E.D. Cal. 2010) (Karlton, J.).[10]

13      The legal principles applicable to a request for

14  preliminary injunctive relief are well established:

15      a party seeking a preliminary injunction "must establish
        [1] that he is likely to succeed on the merits, [2] that

16      he is likely to suffer irreparable harm in the absence

17  _____

18      [8] <u>See</u> Complaint ¶ 40.   The ADEA provides, in relevant part:

19      It shall be unlawful for an employer ... to
        fail or refuse to hire or to discharge any

20      individual or otherwise discriminate against
        any individual with respect to his

21      compensation, terms, conditions, or privileges
        of employment, because of such individual's

22      age.

23      [9] <u>See</u> <u>Granny Goose Foods, Inc. v. Brotherhood of Teamsters</u>
        <u>Local No. 70</u>, 415 U.S. 423, 439 (1974) (TROs "should be restricted

24  to serving their underlying purpose of preserving the status quo
    and preventing irreparable harm just so long as is necessary to

    hold a hearing, and no longer").

25

26      [10] <u>Citing</u> <u>Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.</u>,
    240 F.3d 832, 839 (9th Cir. 2001).

5

1   of preliminary relief, [3] that the balance of equities
2   tips in his favor, and [4] that an injunction is in the
    public interest."

3   McDermott v. Ampersand Pub., LLC, 593 F.3d 950, 957 (9th Cir.

4   2010).[11]

5       Although plaintiff's original TRO request was to preserve the

6   status quo – that is, to stop the CDCR from firing her – in the

7   current circumstance, she seeks an affirmative injunction to

8   restore her job and benefits to her.  Such affirmative relief is

9   "particularly disfavored":

10      A prohibitory injunction preserves the status quo.  A
        mandatory   injunction   "'goes   well   beyond   simply
11      maintaining   the   status quo pendente lite   [and]   is
        particularly disfavored.'"  When a mandatory preliminary
12      injunction is requested, the district court should deny
        such relief "'unless the facts and law clearly favor the
13      moving party.'"

14  Stanley v. University of Southern California, 13 F.3d 1313, 1320

15  (9th Cir. 1994) (citations omitted).

16  **III. ANALYSIS - TRO AND PI**

17      **A.   Likelihood of Success on the Merits.**

18          **1.   Title I of the ADA.**

19      Defendant CDCR argues that plaintiff cannot succeed on the

20  merits because sovereign immunity bars the Title I claim against

21  CDCR (money or injunctive relief).  CDCR appears to be correct.[12]

22  _____

23      [11] Quoting Winter v. NRDC, 555 U.S. 7, 20 (2008).

24      [12]  However, CDCR cites only Walsh v. Nevada Dep't of Human
    Resources, 471 F.3d 1033, 1036 (9th Cir. 2006), which does not hold
    that injunctive relief is barred.  In this TRO application,
25  plaintiff seeks an injunction against the CDCR and against Governor
    Brown and Does 1-50 in their official capacities.  CDCR incorrect
26  asserts that plaintiff has not sued any state officials in their

6

1  See Okwu v. McKim, 682 F.3d 841, 845 (9th Cir. 2012) ("only Title

2  II abrogates a state's Eleventh Amendment immunity.   That means

3  that a state employee like Okwu, unlike the consumer of state

4  public services ... cannot use the ADA remedial scheme to vindicate

5  his or her ADA rights") (cites omitted).[13]

6          **2.   Title II of the ADA.**

7      Defendant CDCR argues that plaintiff's Title II claim cannot

8  succeed   because   Title   II   does   not   address   employment

9  discrimination, a matter comprehensively addressed in Title I.

10 CDCR appears to be correct.   See Zimmerman v. Oregon Dept. of

11 Justice, 170 F.3d 1169, 1183 (9th Cir. 1999) ("the Rehabilitation

12 Act does not provide a basis for interpreting Title II to apply to

13 employment," but noting a split in the Circuits), cert. denied, 531

14 U.S. 1189 (2001).

15         **3.   Section 504 of the Rehabilitation Act.**

16     Defendant says nothing about plaintiff's Section 504 claim.[14]

17 Congress has expressly abrogated the state's sovereign immunity

18 ("including remedies both at law and in equity"), for violations

19

20 official capacities.

21     [13] The disabled state employee's only remedy, according to

22 Okwu is the state's anti-discrimination laws.

23     [14] In fairness, the 206 pages of the Complaint and exhibits,
   and plaintiff's 207 page declaration, are very hard to read and
24 understand.   It is not impossible to miss the fact that plaintiff
   is suing under Section 504, or indeed under anything other than the
   ADA, especially with the limited time defendant had available to
25 respond to plaintiff's voluminous papers.   The court appreciates
   defendant's candor in conceding that in light of the time
26 constraints, it missed the Section 504 claim.

                                    7

of Section 504.   <u>See</u> 42 U.S.C. § 2000d-7(a);[15] <u>Miranda B. v.</u>

<u>Kitzhaber</u>, 328 F.3d 1181, 1186 (9th Cir. 2003) (<u>per curiam</u>)

("because the State voluntarily accepted federal funds under

Section 504, it has waived its right to immunity from suit under

the Eleventh Amendment").[16] The complaint appears to state a prima

facie case under Section 504,[17] which covers employment

discrimination.[18]

---

[15] The waiver provision states:

> (1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 ....

> (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

[16] The court assumes, without deciding, that the State has accepted federal Rehabilitation Act funds.

[17] <u>See</u> <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1105 (2003):

> To establish a violation of § 504 ... a plaintiff must show that (1) she is handicapped within the meaning of the RA; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance.

[18] <u>See</u> <u>School Bd. of Nassau County, Fla. v. Arline</u>, 480 U.S. 273, 278 (1987) ("The range of programs subject to § 504's prohibition is broader, however, than that covered by Title VI, because § 504 covers employment discrimination even in programs

1        **4.   Section 1983.**

2        Defendant says nothing about plaintiff's Section 1983 claim.

3   However, there is some doubt about whether plaintiff can press a

4   Section 1983 claim for discrimination based upon disability, since

5   Title I of the ADA provides a comprehensive remedy for such

6   discrimination (but apparently, no damages). See <u>Okwu v. McKim</u>,

7   682 F.3d at 846.   In any event, it appears that the Eleventh

8   Amendment may bar any Section 1983 claim against CDCR – even a

9   claim for injunctive relief only. <u>Fireman's Fund Ins. Co. V. City</u>

10  <u>of Lodi, California</u>, 302 F.3d 928, 957 n.28 (9th Cir.) ("The

11  Eleventh Amendment bars suits which seek either damages or

12  injunctive relief against a state, an 'arm of the state,' its

13  instrumentalities, or its agencies") (internal quotation marks

14  omitted), <u>cert. denied</u>, 538 U.S. 961 (2003).[19]

15       Claims "seeking only prospective declaratory or injunctive

16  relief against state officers in their official capacities" are not

17  so barred.   <u>Id.</u> (internal quotation marks omitted), <u>citing</u> <u>Los</u>

18  <u>Angeles County Bar Assoc. V. Eu</u>, 979 F.2d 697, 704 (9th Cir. 1992).

19  Plaintiff has sued – and served – Governor Brown in his official

20  capacity (along with Does 1-50, presumably also state officials in

21  their official capacities).[20]   Also, a Section 1983 claim that is

22  ─────────────────

23  that receive federal aid with a primary objective other than the
    promotion of employment").

24      [19] <u>Citing</u> <u>Franceschi v. Schwartz</u>, 57 F.3d 828, 831 (9th Cir.
25  1995) (<u>per curiam</u>).

26      [20] Governor Brown has not responded to plaintiff's application
    for TRO/PI.   However, plaintiff does not appear to seek any relief

9

1  not simply predicated upon violations of the ADA would not appear

2  to be precluded by the ADA or the Eleventh Amendment.  Cf. Okwu,

3  682 F.3d at 846 (separately analyzing Section 1983 claim after

4  finding that the ADA precludes any ADA claim predicated solely on

5  violations of the ADA).

6            **5.   Title VII of the Civil Rights Act of 1964.**

7       Defendant says nothing about plaintiff's Title VII claim.  It

8  appears that Congress has abrogated the states' sovereign immunity

9  for Title VII claims.  See Nevada Dept. of Human Resources v.

10  Hibbs, 538 U.S. 721, 729-730 (2003) ("Congress responded to this

11  history of discrimination by abrogating States' sovereign immunity

12  in Title VII of the Civil Rights Act of 1964," and the Supreme

13  Court "sustained this abrogation" in Fitzpatrick v. Bitzer, 427

14  U.S. 445 (1976)).  The complaint appears to state a prima facie

15  case under Title VII.

16            **6.   ADEA.**

17       Defendant says nothing about plaintiff's ADEA claim.  However,

18  it appears that there may be no valid abrogation of sovereign

19  immunity for such a claim.  Kimel v. Florida Bd. of Regents, 528

20  U.S. 62, 91 (2000) ("The ADEA's purported abrogation of the States'

21  sovereign immunity is accordingly invalid").

22                           ...

23       While plaintiff appears to state a prima facie case under her

24

25  _____

26  from the Governor (as distinguished from the CDCR) on this
   application, so the non-response is of no concern here.

                                  10

1    non-barred claims,[21] her papers do not make it clear that she is

2    likely to prevail on the merits.  Plaintiff's memorandum in support

3    of her application moreover, focuses on her right to intervene in

4    <u>Coleman v. Brown</u>, Civ. No. 2:90-cv-520 (E.D. Cal.).  It does not

5    show that she is likely to succeed on the merits of her complaint.

6        **B.   Irreparable Harm.**

7        Plaintiff runs into more trouble when she alleges irreparable

8    harm.  She alleges that defendants are preventing her from

9    providing psychiatric services to inmates, which, she claims, has

10   caused the suicide rate to spike 400%.  The court has no opinion

11   on this assertion, because plaintiff does not appear to have

12   standing to litigate a claim of harm to others.

13       The harm to plaintiff herself meanwhile, is all financial in

14   nature: lost wages and benefits; her home will go into foreclosure

15   because of her lost wages; terrible tax consequences will result

16   when she cannot repay a tax-advantaged loan because of her lost

17   wages.  Ordinarily, monetary losses do not constitute irreparable

18   injury:

19           [T]he temporary loss of income, ultimately to be
             recovered, does not usually constitute irreparable
20           injury. * * * "The key word in this consideration is
             irreparable.  Mere injuries, however substantial, in

21   _____

22       [21] Plaintiff does support her claims with a signed declaration
     in support of her claims.  The declaration can be read to show that
23   she was discriminated against and harassed because of her gender,
     and that defendants failed to engage in required informal dialogue
24   needed to determine how plaintiff could be accommodated, and denied
     reasonable accommodation without any explanation.  <u>See, e.g.</u>,
25   Plaintiff Declaration (ECF No. 8-1) ¶¶ 16 (failure to engage in
     informal dialogue), 37 (failure to accommodate), 40 (gender
26   discrimination), 44 (sexual harassment).

1   terms of money, time and energy necessarily expended
    * * * are not enough.  The possibility that adequate
2   compensatory or other corrective relief will be
    available at a later date, in the ordinary course of
3   litigation, weighs heavily against a claim of
    irreparable harm."

4

5   Colorado River Indian Tribes v. Town of Parker, 776 F.2d 846, 850

6   (9th Cir. 1985), quoting Sampson v. Murray, 415 U.S. 61, 90 (1974).

7       In this case however, defendants argue, apparently correctly,

8   that monetary damages are not available for employment

9   discrimination under the ADA.  If no monetary damages are available

10  at all, then possibly plaintiff is suffering irreparable harm from

11  her lost wages.

12      No one has briefed whether monetary damages are available

13  under plaintiff's other apparently viable claims, namely those

14  under Title VII and Section 504.  However, it appears that back-pay

15  is available under Title VII, as an equitable award, if plaintiff

16  prevails.[22]  Back-pay may also be available under Section 504.[23]  If

17  monetary damages are available pursuant to those statutes, then

18  plaintiff is less likely to be suffering irreparable harm.

19  ////

20

21      [22] Price v. Stevedoring Services of America, Inc., 697 F.3d
    820, 837 (9th Cir. 2012) (en banc) (for Title VII, "'An award of
22  back pay is appropriate to advance Congress' intent to make persons
    whole for injuries suffered through past discrimination'"), quoting
23  Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1020 (9th Cir.
    2000) ("The relevant [Title VII equitable] remedies include
24  reinstatement and awards of back pay and front pay").

25      [23] See Consolidated Rail Corp. v. Darrone, 465 U.S. 624,
    631 (1984) ("respondent, having alleged intentional discrimination,
26  may recover backpay in the present § 504 suit").

12

**C.    Balance of Equities.**

Plaintiff alleges that her pay has been wrongfully withheld for seventeen (17) months.  Plaintiff does not explain why she did not seek to correct the non-payment of wages and benefits before now.  If plaintiff is restored to the payroll, assuming the court could order this, then defendants will have to pay her salary, and presumably will never get it back, even if plaintiff ultimately loses the lawsuit.  However, if the status quo is maintained, it appears that plaintiff will be able to recover her lost wages through back-pay awards if she prevails under Title VII and/or Section 504.

**D.    The Public Interest.**

There is a public interest in having psychiatrists on staff to serve the prison population.  However, it appears that plaintiff was not working for the 17 months prior to her termination date because she was on medical leave.   If granting plaintiff reinstatement would only place her back into non-working status, that would not seem to advance the public interest.

**IV.   ANALYSIS - RECONSIDERATION**

Plaintiff seeks reconsideration of the court's January 8, 2013 Order (ECF No. 6), denying her true <u>ex parte</u> application for a TRO or PI.  Plaintiff asserts that she had, in fact, served defendant with her papers, even though she presented no evidence of it to the court at the time.

The decision was correct when entered, as it was plaintiff's responsibility to show that she had provided the required notice,

1 | which she did not do.  In any event, the court can no longer

2 | "restrain" the CDCR from firing plaintiff, because it has already

3 | done so.

4 |   Finally, the renewed TRO application currently before the

5 | court moots the earlier, failed, TRO application.

6 | **V.    CONCLUSION**

7 |   For the reasons stated above:

8 |   1.    Plaintiff's <u>ex parte</u> application for a TRO and/or PI (ECF

9 | No. 8), is **DENIED**;

10 |   2.    Plaintiff's motion for reconsideration (ECF No. 9), may

11 | be decided on the papers without the need for oral argument, and

12 | is **DENIED**; and

13 |   3.    Pursuant to E.D. Cal. R. 302(c)(21), this matter is

14 | referred to the Magistrate Judge assigned to this case for further

15 | proceedings.[24]

16 |   IT IS SO ORDERED.

17 |   DATED:  January 24, 2013.

18 |

19 |

20 | LAWRENCE K. KARLTON
21 | SENIOR JUDGE
     UNITED STATES DISTRICT COURT

22 |

23 |

24 |

25 |   [24] The Magistrate Judge is of course free, if he chooses, to
26 | require plaintiff to amend her Complaint to comport with the "short
     and plain statement" requirements of Fed. R. Civ. P. 8(a).