UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN Y. KIRBY,<br><br>   Plaintiff,<br><br>   v.<br><br>EDMUND G. BROWN, et al.,<br><br>   Defendants. | No. 2:13-cv-00021 LKK JFM (PS)<br><br>FINDINGS & RECOMMENDATIONS |

## I.  INTRODUCTION

Plaintiff, a board certified psychiatrist formerly employed by the California Department of Corrections and Rehabilitation ("CDCR") at Salinas Valley State Prison ("SVSP"), is proceeding pro se in this matter. Plaintiff initiated this action pursuant to Section 504 of the Rehabilitation Act (29 U.S.C. § 794), Titles I and II of the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and the Age Discrimination in Employment Act, alleging employment discrimination against defendant Brown, in his official capacity, and defendant CDCR.  (Am. Compl. filed Jan. 18, 2013 (ECF No. 8).)  This matter was referred to a Magistrate Judge pursuant to Local Rule 302(c)(21).

Before the court is defendant Brown's motions to quash service of summons (ECF No. 19) and to dismiss plaintiff's first amended complaint (ECF No. 26), as well as defendant CDCR's motion to dismiss plaintiff's first amended complaint.  (ECF No. 20.)  Plaintiff has

opposed the defendants' motions and separately moves to strike those motions.[1] (ECF Nos. 29, 31, 33, 38 and 39.) Plaintiff has also filed a motion to stay the action pending resolution of her interlocutory appeal (ECF No. 34), and a motion for reconsideration of this court's order directing plaintiff to respond to defendants' motions (ECF No. 29).

On May 24, 2013, this court heard oral argument on defendant Brown's motion to dismiss and plaintiff's motion to stay.[2] For the reasons discussed below, the undersigned will recommend that plaintiff's various motions be denied, that defendant Brown's motion to quash service of summons be denied as moot and that defendants' motions to dismiss be granted.

## II. FACTUAL ALLEGATIONS

A partial summary of the allegations of plaintiff's amended complaint are included in the following excerpt of the court's order denying her ex parte application for a temporary restraining order and/or a preliminary injunction:

> Plaintiff Karen Kirby, M.D. has been employed as a staff psychiatrist at Mule Creek State Prison and at Salinas Valley State Prison ("SVSP"). Amended Complaint ("Complaint") (ECF No. 8) ¶ 9. However, plaintiff has not worked at either facility since July 31, 2011, pursuant either to a "lock-out" by defendant California Department of Corrections and Rehabilitation ("CDCR"), or because plaintiff was on medical leave, or because plaintiff stopped working on the advice of her union. Complaint ¶¶ 4 (lock-out), 6 (medical leave); Plaintiff's Declaration ¶ 24 (union advice). Plaintiff, who is disabled, wishes to do her job from a remote location, thus providing "telemedicine psychiatric services" from "a secure CDCR parole office in Santa Cruz." Complaint ¶ 14. Defendants have failed and refused to accommodate plaintiff's disability, specifically, they have refused to allow her to provide these services remotely. Complaint ¶ 6.

(ECF No. 17 at 1.)

In addition, plaintiff alleges in her amended complaint the following. Plaintiff was denied a reasonable accommodation to provide telepsychiatry, the use of telecommunication to provide

---

[1] The court finds that plaintiff's motion to strike defendants' motions is without merit and should therefore be denied. See Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."); see also Fed. R. Civ. P. 7(a)(1)-(7) (defining "pleadings").

[2] Pursuant to Local Rule 230(g), the court has determined that defendant Brown's motion to quash and defendant CDCR's motion to dismiss are appropriately submitted on the record and the briefs on file without oral argument.

psychiatric care, so that defendants can hire a younger and less experienced doctor for telepsychiatry services at SVSP. (Am. Compl. (ECF No. 8) at ¶¶ 1, 17-18, 32-33.) Defendant CDCR acted with "malice and reckless indifference" in terminating plaintiff rather than allowing her to provide telepsychiatry services from a remote location in Santa Cruz "as reasonable accommodation for her" disability.[3] (Id. at ¶¶ 5, 30.) Defendants also violated plaintiff's "statutory right to freedom from gender, age, disability discrimination, retaliation and sexual harassment." (Id. at ¶ 6.) In this regard, plaintiff's hours were reduced because of her age and gender. (Id. at ¶¶ 44-45.) Plaintiff's termination is an example of a "hostile work environment . . . in violation of Title VII . . . which banned employment discrimination based on sex (gender)." (Id. at ¶ 40.) Plaintiff was made to "lift more patient charts, write more detailed progress notes[,] walk to more distant cells to perform face to face '5-day follow-ups,' . . . and perform more comprehensive and thorough evaluations and medication management" than her male colleagues. (Id. at ¶ 63.) Defendant CDCR "management has been trying to 'get rid' of [plaintiff,] the only female civil service psychiatrist at the all-male SVSP prison for years . . ." and plaintiff's termination "is the nadir of CDCR's pattern of harassment, discrimination and retaliation against" plaintiff. (Id. at ¶ 38.) Plaintiff was sexually harassed and stalked by inmates in the bathroom and parking lot between 2006 and 2007. (Id. at ¶¶ 40-41.) With regard to defendant Governor Brown, plaintiff alleges that "[t]here is a direct chain of command and link between" defendant Brown, and "the CDCR which oversee [plaintiff's] direct employer . . . [SVSP]." (Id. at ¶ 10.)

/////

---

[3] In her amended complaint plaintiff refers to her efforts to intervene in the Coleman litigation. See Coleman, et al. v. Schwarzenegger, et al., No. 2:90-cv-00520-LKK-JFM (PC) (E.D. Cal.). Plaintiff appears to be alleging that telepsychiatry is a reasonable accommodation because it is "accepted and recognized by the Court appointed Monitors in the Coleman inmate class action." (Am. Compl. (ECF No. 8) at ¶ 38, n.1 17-19.) The undersigned also notes that some of plaintiff's allegations appear to be based on her theory that because she was "forced to leave SVSP, there was little or no psychiatric back up to cover [her] evening and weekend workload" which "likely explains the 400% increase in inmate suicides at SVSP." (Id. at ¶ 3.) As a result, plaintiff argues she should be granted employee intervenor status in the Coleman litigation. (Id. at ¶ 8.) Plaintiff has not filed a motion to intervene under Fed. R. Civ. P. 24, nor has she made a showing of standing to assert these claims on behalf of inmates. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see also ECF No. 17 at 11 ("The court has no opinion on this assertion, because plaintiff does not appear to have standing to litigate a claim of harm to others."). Therefore, the court will not consider any arguments based on plaintiff's reliance on the Coleman litigation in opposing the pending motions to dismiss.

### III. PROCEDURAL BACKGROUND

Plaintiff filed her original complaint and motion for temporary restraining order on January 4, 2013, alleging that the defendants violated her rights by denying her "multiple requests for reasonable accommodation" of her disability and "unlawfully terminating her employment on December 19, 2012." (ECF No. 1.) On January 8, 2013, the assigned District Judge denied plaintiff's motion for temporary restraining order for failure to provide the required notice to defendants or their counsel. (ECF No. 6.) Thereafter, on January 18, 2013, plaintiff filed an amended complaint and a motion for reconsideration of the court's order denying her motion for a temporary restraining order. (ECF Nos. 8 and 9.) On January 28, 2013, the assigned District Judge denied plaintiff's ex parte application for a temporary restraining order and/or a preliminary injunction. (ECF No. 17.) On February 11, 2013, plaintiff filed a notice of interlocutory appeal of the court's January 28, 2013 order. (ECF No. 21.)

On January 30, 2013, defendant Governor Brown filed a motion to quash service of summons. (ECF No. 19.) On January 31, 2013, defendant CDCR filed a motion to dismiss. (ECF No. 20.) On February 28, 2013, defendant Brown filed a motion to dismiss. (ECF No. 26.) On March 5, 2013, the court ordered plaintiff to file an opposition to defendant Brown's motion to quash and to defendant CDCR's motion to dismiss. (ECF No. 27.) On March 8, 2013, plaintiff filed a motion for reconsideration of the court's March 5, 2013, order as well as a motion to strike both defendant Brown's motion to quash and defendants' motions to dismiss. (ECF No. 29.) On March 18, 2013, plaintiff filed an opposition to defendant Brown's motion to quash and to defendant CDCR's motion to dismiss, pursuant to the court's March 5, 2013, order. (ECF No. 33.)

On March 19, 2013, plaintiff filed a motion to stay the proceedings pending the outcome of her interlocutory appeal. (ECF No. 34.) The court heard oral arguments on defendant Brown's motion to dismiss (ECF No. 26) and plaintiff's motion to stay (ECF No. 34) on May 24, 2013.

/////
/////
/////

## IV. LEGAL STANDARDS

**A.  Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific claims alleged in the action.  "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact."  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

When a party brings a facial attack to subject matter jurisdiction, that party contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made.  See Sea Vessel Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction.  Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003); Miranda v. Reno, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).  Nonetheless, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" when resolving a facial attack.  Safe Air for Everyone, 373 F.3d at 1039.

When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction, no presumption of truthfulness attaches to the plaintiff's allegations.  Thornhill Publ'g Co., 594 F.2d at 733.  "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).  When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, plaintiff has the burden of establishing that such jurisdiction does in fact exist.  Thornhill Publ'g Co., 594 F.2d at 733.

/////

**B.     Failure to State a Claim**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson, 551 U.S. at 93 (quoting Twombly, 550 U.S. at 554, in turn quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1202 (3d ed. 2004)). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972). A motion to dismiss for failure to state a claim

should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

### V.    MISCELLANEOUS MOTIONS

**A.    Plaintiff's Motion to Stay**

Plaintiff moves the court to stay this action on two grounds: (1) plaintiff filed an interlocutory appeal with the Ninth Circuit; and (2) plaintiff withheld her consent to the jurisdiction of a Magistrate Judge. (ECF No. 29 at 3; ECF No. 34.) On June 19, 2013, the Ninth Circuit affirmed the district court's order denying plaintiff's ex parte application for temporary restraining order and/or preliminary injunction. (ECF No. 41.) Therefore, plaintiff's motion stay on the grounds that her interlocutory appeal is pending should be denied as moot.

With regard to the involvement of a Magistrate Judge, plaintiff is proceeding pro se in this action. The case was therefore referred to a Magistrate Judge pursuant to the terms of Local Rule 302(c)(21). Plaintiff appears to misapprehend the nature of that Local Rule. Pursuant thereto, in the absence of plaintiff's consent to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c)(1), the assigned Magistrate Judge will issue findings and recommendations for the assigned District Judge's consideration and de novo review with respect to any dispositive motion filed in this action. Therefore, plaintiff's motion to stay on the grounds that she did not consent to Magistrate Judge jurisdiction should also be denied.

**B.    Plaintiff's Motion for Reconsideration**

On March 5, 2013, the court entered an order vacating the hearing on defendant Brown's motion to quash (ECF No. 19) and defendant CDCR's motion to dismiss (ECF No. 20). (ECF No. 27.) The court directed plaintiff to file an opposition, if any, to both of these motions within fourteen days thereafter. (Id.) On March 8, 2013, three days after the court's order directing her to file an opposition to defendants' motions, plaintiff filed a document titled "Notice and Motion for Reconsideration of Order Filed March 5, 2013 and Motion to Strike Defendants' Motions to

/////

Dismiss and Quash."[4]  (ECF No. 29.)  On March 18, 2013, plaintiff then filed an opposition to defendants' motions.  (ECF No. 33.)  It is unclear what plaintiff is requesting reconsideration of, given the fact that she timely opposed defendants' motions in accordance with the court's March 5, 2013 order.  Therefore, plaintiff's motion for reconsideration should be denied as having been rendered moot by her filing of the required written oppositions to defendants' motions.

**C.    Defendant Brown's Motion to Quash Service**

Defendant Governor Brown moves to quash service of summons and plaintiff's first amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(5).  (ECF No. 19.)  For the reasons discussed below, the court finds that dismissal of plaintiff's complaint is warranted.  Therefore, the court declines to address defendant Brown's alternative argument seeking an order that service of the summons and complaint be quashed pursuant to Rule 12(b)(5).  Accordingly, the motion to quash service of summons should be denied as moot.

## VI.    DEFENDANTS BROWN AND CDCR'S MOTIONS TO DISMISS

In addition to their separate arguments, defendants Brown and CDCR (collectively "defendants") both move to dismiss plaintiff's complaint on the following grounds:  (1) they are immune from liability under the Eleventh Amendment; (2) plaintiff failed to exhaust her administrative remedies as required; and (3) plaintiff has failed to state a claim upon which relief can be granted.[5]  (ECF Nos. 20 and 26.)  The court will first address these jointly submitted arguments before addressing each defendant's separate arguments for dismissal aimed at plaintiff's remaining allegations.

**A.    Eleventh Amendment**

Defendant Governor Brown contends that he is immune from suit for monetary damages under Title I of the ADA, the ADEA and 42 U.S.C. § 1983, pursuant to the Eleventh Amendment.  (ECF No. 26 at 6, 12.)  Defendant CDCR contends it is immune from suit for monetary damages

---

[4]  The court notes that plaintiff filed this document a second time on March 12, 2013.  (ECF No. 31.)  This duplicate filing will be disregarded by the court.

[5]  Plaintiff filed a number of written oppositions to defendants' motions.  (See ECF Nos. 29, 33, 38, 39.)  While plaintiff's oppositions are difficult to decipher, to the extent the court is able to construe the arguments set forth therein, they are all addressed in the court's analysis below.

and injunctive relief with respect to these claims pursuant to the Eleventh Amendment.  (ECF No. 20 at 6-7.)

In her oppositions, plaintiff argues that "Governor Brown is not 'immune' or otherwise legally isolated, as his public statements about the efficiency of mental health delivery at SVSP etc. are directly contradicted by Dr. Kirby's experience and facts filed under penalty of perjury in her pleadings herein." (ECF No. 38 at 4; see also ECF No. 39 at 6.)  Plaintiff has not addressed defendant CDCR's arguments regarding Eleventh Amendment immunity.

For the reasons set forth below, the court finds that plaintiff is barred by the Eleventh Amendment from bringing claims against defendant Governor Brown for monetary damages, and is also barred from bringing claims against defendant CDCR for monetary damages and injunctive relief, under Title I of the ADA, the ADEA and §1983.

According to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has noted:  "The [Eleventh] Amendment . . . enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject matter jurisdiction." Idaho v. Couer d'Alene Tribe, 521 U.S. 261, 267 (1997).  "The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state.  Though its language might suggest otherwise, the Eleventh Amendment has long been construed to extend to suits brought against a state by its own citizens, as well as by citizens of other states." Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).  See also Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54-55 (1996); Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Austin v. State Indus. Ins. Sys., 939 F.2d 676, 677 (9th Cir. 1991).

The Eleventh Amendment bars suits against state agencies as well as those where the state itself is named as a defendant. See Puerto Rico Aqueduct, 506 U.S. at 144; Maldonado v. Harris, 370 F.3d 945, 951 (9th Cir. 2004); Natural Resources Defense Council v. California Dept. of Transportation, 96 F.3d 420, 421 (9th Cir. 1996); Brooks, 951 F.2d at 1053; see also Lucas v.

Department of Corrections, 66 F.3d 245, 248 (9th Cir.1995) (Board of Corrections is an agency entitled to immunity); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989) (Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity).  However, defendants sued in their official capacities are not entitled to Eleventh Amendment immunity with respect to claims seeking injunctive relief.  Bair v. Krug, 853 F.2d 672, 675 (9th Cir. 1988) ("[T]he eleventh amendment bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, i.e., money damages, rather than prospective, e.g., an injunction").

In particular, the Eleventh Amendment bars claims brought under Title I of the ADA.  Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 360 (2001); Okwu v. McKim, 682 F.3d 841, 845 (9th Cir. 2012) ("only Title II abrogates a state's Eleventh Amendment immunity"); Cory v. White, 457 U.S. 85, 91 (1982) (the Eleventh Amendment bar from suit extends to any suit regardless of the relief sought); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  The Eleventh Amendment also bars claims brought under the ADEA.  Kimel v. Florida Bd. Of Regents, 528 U.S. 62, 91 (2000) ("the ADEA's purported abrogation of the States' sovereign immunity is . . . invalid").  Finally, civil rights claims brought against the state pursuant to § 1983 are similarly barred by the Eleventh Amendment.  Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999) ("The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, . . . and the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity[.]") (citations and internal quotations omitted).

Therefore, based on Eleventh Amendment immunity, plaintiff is barred from pursuing claims for monetary damages against defendant Governor Brown, and from bringing claims for both monetary damages and injunctive relief against defendant CDCR under Title I of the ADA, the ADEA and § 1983.

Accordingly, defendants' motions to dismiss such claims on Eleventh Amendment immunity grounds should be granted.

/////

**B.     Failure to Exhaust Administrative Remedies**

Defendants also argue that plaintiff's Title VII and Rehabilitation Act claims are subject to dismissal on the grounds that she failed to exhaust her administrative remedies prior to initiating this action as required. In her opposition to defendants' motion to dismiss, plaintiff merely claims in conclusory fashion that this court has subject matter jurisdiction over her claims. (See ECF No. 33 at 12.)

To bring a claim under Title VII, a plaintiff must first file a charge with the EEOC within 180 days of the alleged unlawful employment practice. Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1101, 03-04 (9th Cir. 2008) (citing 42 U.S.C. § 2000e-5(e)). "In cases where a plaintiff has never presented a discrimination complaint to the appropriate administrative authority, . . . the district court does not have subject matter jurisdiction." Sommatino v. United States, 255 F.3d 704, 708 (9th Cir. 2001) (citing Blank v. Donovan, 780 F.2d 808, 809 (9th Cir.1986)). See also Scott v. Perry, 569 F.2d 1064, 1065-66 (9th Cir.1978)). The failure to observe Title VII's exhaustion requirements renders a suit subject to dismissal. Karim–Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988).

However, with respect to plaintiff's claims under Section 504 of the Rehabilitation Act defendants' failure to exhaust arguments are unpersuasive. "[P]rivate plaintiffs suing under § 504 need not first exhaust administrative remedies." Smith v. Barton, 914 F.2d 1330, 1338 (9th Cir. 1990). See also O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1061 (9th Cir. 2007) ("We recognize that neither Title II of the ADA nor section 504 of the Rehabilitation Act generally requires administrative exhaustion before filing suit.")[6]

The undersigned will also address whether plaintiff's claims brought under the ADEA and Title I of the ADA are subject to dismissal for failure to exhaust as well.[7] With respect to an

---

[6] Accordingly, plaintiff's Rehabilitation Act claims as to each defendant will be addressed separately below.

[7] The court has an independent obligation to address sua sponte whether it has subject matter jurisdiction. Allstate Ins. Co. v. Hughes, 358 F.3d 1089, 1093 (9th Cir. 2004). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). Accordingly, the court will also address whether plaintiff's claims brought under the ADEA and Title I of the ADA are subject to dismissal due to plaintiff's failure to exhaust her administrative remedies as required.

11

1    ADEA claim, "[n]o civil action may be commenced by an individual under this section until 60

2    days after a charge alleging unlawful discrimination has been filed with the [EEOC]."  29 U.S.C.

3    § 626(d); see Albano v. Schering-Plough Corp., 912 F.2d 384, 386 (9th Cir. 1990) ("[t]he filing

4    of an EEOC charge is a prerequisite to bringing a civil action under the [ADEA]"); see also

5    Sanchez v. Pacific Powder Co., 147 F.3d 1097, 1099 (9th Cir. 1998) ("[t]he ADEA requires a

6    person to file a charge with the EEOC before initiating a civil action for age discrimination").

7    　　　　With regard to an ADA claim brought under Title I, the Ninth Circuit has explained that

8    "Title I requires an employee first to file a charge with the EEOC in a timely manner."

9    Zimmerman v. Oregon Dept. of Justice, 170 F.3d 1169, 1172 (9th Cir. 1999) (Title I incorporates

10   remedies and procedures of Title VII of the Civil Rights Act of 1964, including charge

11   provisions).  See also Stiefel v. Bechtel Corp., 624 F.3d 1240, 1244 (9th Cir. 2010) (noting

12   procedures in 42 U.S.C. § 2000e adopted by ADA); 42 U.S.C. § 12117(a) (incorporating Title VII

13   procedures); Johnson v. County of Monterey, No. 5:10-CV-4633 JF (PSG), 2011 WL 250429, at

14   *3 (N.D. Cal. Jan. 26, 2011) ("The ADA requires individuals alleging employment discrimination

15   to file a claim with the Equal Employment Opportunity Commission (EEOC) before filing a

16   lawsuit.").

17   　　　　In short, to establish federal subject matter jurisdiction, plaintiff is required to exhaust her

18   administrative remedies by filing a charge with the EEOC or the appropriate state agency before

19   seeking federal adjudication of any claim brought pursuant to Title VII, Title I of the ADA or the

20   ADEA.  See Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990) (Title VII); Dao v. Auchan

21   Hypermarket, 96 F.3d 787, 788 (5th Cir. 1996) (Title I of ADA); Stewart v. Brown, 86 F.3d 107,

22   110 (7th Cir. 1996) (Title I of ADA); Albano, 912 F.2d at 386 (ADEA); Alberti v. City & County

23   of San Francisco Sheriff's Dept., 32 F.Supp.2d 1164, 1174 (N.D. Cal. 1998), overruled on other

24   grounds by Zimmerman, 170 F.3d at 1169.

25   　　　　The Ninth Circuit has also made clear that "[t]he jurisdictional scope of the . . . court

26   action depends on the scope of the EEOC charge and investigation."  Sosa, 920 F.2d at 1456.  See

27   also EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994).  "The administrative charge

28   requirement serves the important purposes of giving the charged party notice of the claim and

narrowing the issues for prompt adjudication and decision." B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1099 (9th Cir. 2002) (internal quotations, alterations and citations omitted).

Here, plaintiff commenced this civil action by filing her complaint in this court on January 4, 2013. (ECF No. 1.) However, plaintiff did not file a "Charge of Discrimination" with the EEOC until January 9, 2013, five days after she filed her complaint in this civil action. (ECF No. 14 at 19.) The EEOC responded to plaintiff's request for notice of right to sue confirming its receipt of her request and indicating that plaintiff's request was forwarded to the U.S. Department of Justice for action.[8] (Id. at 63.) As a result of plaintiff's failure to file a timely charge with the EEOC prior to initiating this action, the purposes of the administrative charge requirement were not met. Defendants were not afforded an opportunity to either attempt to resolve plaintiff's concerns before she filed her complaint, or to be put on notice of plaintiff's claims so that they could potentially narrow the issues. See B.K.B., 276 F.3d at 1099.

As noted, plaintiff argues that the court has subject matter jurisdiction and must consider claims that are "'reasonably related to allegations in the charge.'" (ECF No. 33 at 12) (quoting B.K.B., 276 F.3d at 1100).) However, the plaintiff in B.K.B. properly filed an administrative charge with the EEOC before filing a civil complaint. Id. at 1095. The Ninth Circuit in B.K.B. clearly stated that "[u]nder Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." Id. at 1099. Thus, plaintiff's argument in this case is unavailing since it cannot be disputed that she failed to file a timely charge with the EEOC before initiating this civil action.

Defendants' motions to dismiss plaintiff's Title VII claim for lack of subject matter jurisdiction due to her failure to comply with the exhaustion requirement should therefore be

/////

/////

/////

---

[8] Based upon the exhibit submitted by plaintiff the precise date of the EEOC's response to her submission, which was made after this civil action was initiated, is unclear. However, that date is of no import to resolution of the issue before the court.

1  granted.  Plaintiff's ADEA and Title I of the ADA claims should likewise be dismissed for the
2  same reason.[9]

### C. Failure to State a Claim

Defendants also argue that plaintiff cannot state a claim upon which relief can be granted under Title II of the ADA because that provision does not address employment discrimination. The argument is persuasive.  The Ninth Circuit held that Title II does not apply to claims of employment discrimination.  Zimmerman, 170 F.3d at 1184.  Because plaintiff's claims arise solely from her alleged employment relationship with defendants, any claim brought by her under Title II of the ADA is not cognizable.

For the reasons set forth above, the court finds defendants' motions to dismiss plaintiff's claim brought under Title II of the ADA should be granted.

### D. Plaintiff's Claims for Injunctive Relief Against Defendant Brown

With regard to plaintiff's remaining claims for injunctive relief under § 1983 and Section 504 of the Rehabilitation Act, defendant Governor Brown argues that such claims should be dismissed because he is not plaintiff's employer and notes that in her complaint plaintiff refers to defendant CDCR as her employer.

As noted above, plaintiff opposes dismissal arguing that defendant Brown is not "legally isolated, as his public statements about the efficiency of mental health delivery at SVSP etc. are directly contradicted by [plaintiff's] experience."  (ECF No. 38 at 4; see also ECF No. 39 at 6.)  Plaintiff also contends that her "injunctive relief claims are not barred because, as governor, defendant Brown, continues to exercise[ ] dominion and control Plaintiff's employment."  (ECF No. 38 at 5; ECF No. 39 at 6.)  Plaintiff further argues that there is a "direct chain of command" between defendant Brown and the CDCR."  (Am. Compl. (ECF No. 8) at ¶ 10.)

/////

---

[9] In any event, it appears clear that plaintiff's ADEA claim against defendant Governor Brown is also subject to dismissal for failure to state a cognizable claim since the allegations of her amended complaint, even if proven, would fail to establish that the Governor is her employer as would be required in order to state a cognizable claim under the ADEA.  See 29 U.S.C. § 623(a)(1) (The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.")

For the reasons set forth below the court finds that plaintiff's claims for injunctive relief under § 1983 and Section 504 of the Rehabilitation Act should be dismissed as well.

**1.    42 U.S.C. §1983**

Title 42 Section 1983 provides, in part: "Every person who, under color of [law] . . . subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress."

To the extent plaintiff is suing defendant Governor Brown in his official capacity, that statute requires an actual connection or link between the actions of the defendant and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In other words, for liability to potentially attach the person named as a defendant must be a "moving force" behind the alleged deprivation. Monell, 436 U.S. at 694-95. Thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. Oklahoma City v. Tuttle, 471 U.S. 808, 817-18 (1985); Monell, 436 U.S. at 694.

Here, plaintiff has made only conclusory allegations regarding defendant Governor Brown's "dominion and control" over her employment, (ECF No. 38 at 5; ECF No. 39 at 6) and the "direct chain of command" between defendant Brown and the CDCR" (Am. Compl. (ECF No. 8) at ¶ 10). Plaintiff has failed to allege any facts that, if proven, would establish that defendant Governor Brown either supervised her during her employment with defendant CDCR or established a policy or custom that played a part in the violation of her constitutional rights.

15

1  Upon reviewing plaintiff's amended complaint the undersigned finds no sufficiently alleged
2  connection or link between defendant Governor Brown's alleged actions, (i.e. his public
3  statements regarding mental health care at SVSP), and plaintiff's alleged employment
4  discrimination such that he was a "moving force" behind the alleged constitutional deprivation.
5  <u>Monell</u>, 436 U.S. at 694-95. Therefore, plaintiff's claim for injunctive relief under § 1983 against
6  defendant Brown should be dismissed.

7  **2. Section 504 of the Rehabilitation Act**

8  Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall,
9  solely by reason of her or his disability, be excluded from the participation in, be denied the
10 benefits of, or be subjected to discrimination under any program or activity receiving Federal
11 financial assistance." 29 U.S.C. § 794(a). In <u>Fleming v. Yuma Regional Medical Center</u>, 587
12 F.3d 938, 939 (9th Cir. 2009), the Ninth Circuit "conclude[d] that § 504 incorporates the
13 'standards' of Title I of the ADA for proving when discrimination in the workplace is actionable,
14 but not Title I *in toto*, and therefore the Rehabilitation Act covers discrimination claims by an
15 independent contractor." <u>See</u> <u>also</u> 29 U.S.C. § 794(d); 42 U.S.C. § 12111 ("The term 'covered
16 entity' means an employer, employment agency, labor organization, or joint labor-management
17 committee."). In other words, notwithstanding the inclusion of independent contractors, Section
18 504 of the Rehabilitation Act applies to employment relationships.

19 Nonetheless, as discussed above, here plaintiff has not alleged in her first amended
20 complaint any facts suggesting that she and defendant Governor Brown had an
21 employee/employer relationship. Rather, plaintiff contradicts any such assertion by alleging that
22 defendant CDCR was her employer. (Am. Compl. (ECF No. 8) at ¶ 10.) Therefore, defendant
23 Governor Brown's motion to dismiss plaintiff's claim brought under Section 504 of the
24 Rehabilitation Act for injunctive relief should also be granted.

25 **E. Plaintiff's Rehabilitation Act Claim Against Defendant CDCR**

26 Defendant CDCR argues that plaintiff's remaining Rehabilitation Act claim fails to state a
27 claim upon which relief can be granted. Defendant CDCR contends that, among other things,
28 plaintiff has failed to properly allege that she was denied a benefit solely by reason of her

16

1  disability as required to state a cognizable claim under Section 504 of the Rehabilitation Act.

2  (ECF No. 20 at 10.)  Plaintiff did not address this argument in her oppositions to the pending

3  motions.  For the reasons discussed below, the court finds that plaintiff's claim under Section 504

4  of the Rehabilitation Act against defendant CDCR should also be dismissed.

5  As noted above, "Section 504 creates a private right of action for individuals subjected to

6  disability discrimination by any program or activity receiving federal financial assistance[.]"

7  Fleming, 587 F.3d at 940.  To establish a violation of that provision

8    a plaintiff must show that (1) she is handicapped within the meaning of [Section 504]; (2) she is otherwise qualified for the
9    benefit or services sought; (3) she was denied the benefit or services *solely* by reason of her handicap; and (4) the program providing the
10   benefit or services receives federal financial assistance.

11 Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003)

12 (emphasis added).

13 After plaintiff took leave from her employment with defendant CDCR on July 31, 2011,

14 (Am. Compl. (ECF No. 8) at ¶¶ 4, 6; Attached Pl.'s Decl. at ¶ 24), SVSP sent her a letter

15 indicating that it was invoking the Absent Without Leave (AWOL) statute (Government Code §

16 19996.2) because plaintiff had been absent without leave from December 10, 2012, until

17 December 16, 2012.[10]  (ECF No. 8-1 at 44.)  In her amended complaint, plaintiff alleges that,

18 among other things, defendant CDCR terminated her in December 2012 because of her

19 disability.[11]

---

[10] This December 19, 2012, letter explained that plaintiff had not worked since July 31, 2011, and that on November 29, 2012, she was "advised that SVSP would allow reasonable accommodation, as defined by the form that [plaintiff's physician] completed on November 1st, 2012." (ECF No. 8-1 at 44.)  Plaintiff was instructed to request an informal Coleman Hearing if she disagreed with these facts.  (Id.)  She was also told that "[i]f the AWOL separation is finalized, [plaintiff] will be considered to have automatically resigned effective the close of business on January 7, 2012. Id.

[11] Plaintiff refers to three letters from her treating physicians in 2010 and 2011, recommending modification of her work duties.  (See ECF No. 8 at 109-12; ECF No. 38 at 25.)  Plaintiff also addressed letters between August 17, 2010 and August 17, 2011, to her supervisors requesting accommodation of her alleged disability.  (See ECF No. 8 at 96, 104, 114, 133 and 168.)  The crux of plaintiff's requests were that, due to her claimed disability, she could not sit for prolonged periods and was therefore unable to commute to work at SVSP.  Accordingly, plaintiff requested permission to telecommute from a location closer to her residence to avoid a long commute. Specifically, plaintiff requested that she be allowed to provide "telemedicine psychiatric services" from "a secure CDCR parole office in Santa Cruz. (Am. Compl. (ECF No. 8) at ¶ 14.)

However, upon reviewing plaintiff's amended complaint, oppositions to the pending motions, and corresponding exhibits, the undersigned finds that plaintiff has not sufficiently alleged that defendant CDCR terminated her based *solely* on her disability. Lovell, 303 F.3d at 1052. Instead, plaintiff herself has alleged that she was not permitted to provide telepsychiatry so defendant CDCR could hire a younger and less experienced doctor to provide telepsychiatry services. (Am. Compl. (ECF No. 8) at ¶¶ 1, 18, 33; see also ECF No. 33 at 8; ECF No. 39 at 10.) Plaintiff also alleged that defendant CDCR "management has been trying to 'get rid' of [plaintiff,] the only female civil service psychiatrist at the all-male SVSP prison for years . . . [,]" and that her termination "is the nadir of CDCR's pattern of harassment, discrimination and retaliation against" plaintiff. (Am. Compl. (ECF No. 8) at ¶ 38; see also ¶ 40 (alleging that plaintiff's termination was a violation of Title VII "which banned employment discrimination based on sex (gender)").) Finally, plaintiff argues in her opposition to the pending motions to dismiss that her "termination was done under the pretext of being AWOL in retaliation for having made public statements about Defendants' inefficient and wasteful delivery of psychiatric care." (ECF No. 33 at 14; see also ECF No. 39 at 5.)

It is therefore apparent that plaintiff has asserted that numerous other factors allegedly formed the bases of defendant CDCR's termination of her employment other than her claimed disability. As a result, plaintiff cannot state a cognizable claim under Section 504 of the Rehabilitation Act since that provision requires that a plaintiff allege and prove that she was discriminated against "solely by reason of her or his disability." 29 U.S.C. § 794(a). See also Dempsey By and Through Dempsey v. Ladd, 840 F.2d 638, 640 (9th Cir. 1987) (finding that, "as an alternative ground for denying section 504 relief," plaintiff failed "to show that he has been a subject of discrimination solely by reason of his handicap") (quoting Plummer by Plummer v. Branstad, 731 F.2d 574, 577 (8th Cir. 1984)) (internal quotations omitted); Leckelt v. Board of Comm'rs of Hosp. Dist. No. 1, 909 F.2d 820, 825 (5th Cir. 1990) ("[a] section 504 plaintiff must prove that he was discriminated against *solely* by reason of his handicap") (citations omitted) (emphasis original); Norcross v. Sneed, 755 F.2d 113, 117 n.5 (8th Cir. 1985) ("it is significant

/////

that the section 504 plaintiff must show that handicap was the *sole* reason for the decision") (emphasis original).[12]

Therefore, the court finds that plaintiff's claim under Section 504 of the Rehabilitation Act against defendant CDCR is not cognizable and should be dismissed as well.

### F.     Leave to Amend

The undersigned has carefully considered whether plaintiff could amend her complaint to state a claim over which this court would have subject matter jurisdiction. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988). See also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely given, the court does not have to allow futile amendments). In light of the nature of the allegations found in plaintiff's amended complaint and the nature of the deficiencies therein as noted above, the undersigned finds that it would be futile to grant plaintiff further leave to amend.

### VI.     CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's March 8, 2013, motion to strike (ECF No. 29) be denied;
2. Plaintiff's March 19, 2013, motion to stay (ECF No. 34) be denied;
3. Plaintiff's March 8, 2013, motion for reconsideration (ECF No. 29) be denied as moot;
4. Defendant Brown's January 30, 2013, motion to quash (ECF No. 19) be denied as moot;
5. Defendant Brown's February 28, 2013, motion to dismiss (ECF No. 26) be granted;
6. Defendant CDCR's January 31, 2013, motion to dismiss (ECF No. 20) be granted; and
7. This case be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

---

[12] The undersigned also notes that terminating an employee on the basis of "isolated, specific incidents" of misconduct is not the equivalent of firing him or her solely because of a perceived disability. Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9th Cir. 1995).

1 after being served with these findings and recommendations, any party may file written
2 objections with the court and serve a copy on all parties.  Such a document should be captioned
3 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
4 objections shall be filed and served within seven days after service of the objections.  The parties
5 are advised that failure to file objections within the specified time may waive the right to appeal
6 the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
7 Dated:  September 4, 2013

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

kirb0124.mtd